IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL MAXEY, | ) | CIVIL NO. 08-00710 HWG-SOM |
| | ) | |
| Plaintiff, | ) | |
| | ) | SCREENING ORDER DISMISSING |
| vs. | ) | COMPLAINT WITH LEAVE TO AMEND |
| | ) | |
| ARNOLD SCHWARZENEGGER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

SCREENING ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND

I.      INTRODUCTION.

On April 1, 2008, pro se Plaintiff Michael Maxey, a California prisoner incarcerated at Folsom State Prison ("FSP") in Folsom, California, brought this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is proceeding in forma pauperis.

On March 20, 2009, Maxey was notified that he was eligible for an out-of-state transfer.  He indicated that he did not want to be transferred, but he was told that he was given no choice.  He was asked to sign a consent form, which he refused. Maxey was then informed that he would be transferred without his written consent, pursuant to Governor Schwarzenegger's executive order authorizing involuntary transfers.

After reviewing the petition pursuant to 28 U.S.C. § 1915(e)(2), the court has determined that Maxey's Complaint does not state a claim.  Accordingly, the Complaint is DISMISSED. Maxey is granted leave to amend his Complaint to state viable

claims no later than March 9, 2009.

II.     ANALYSIS.

A claim arises under 42 U.S.C. § 1983 against one "who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

The Supreme Court has cautioned that this section "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 145 (1979). "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right secured by the Constitution and laws." Id., 443 U.S. at 140.

      A.   The Alleged Violations of State Law Do Not Give Rise to a Federal Claim.

Maxey has attempted to articulate a state claim, asserting that Gov. Schwarzenegger's executive order allowing prisoners to be transferred without their written consent violates Cal. Penal Code § 11191(a), which, until 2007, stated in relevant part, "no inmate sentenced under California law may be committed or transferred to an institution outside of this state,

2

unless he or she has executed a written consent to the transfer." This language was deleted, however, in the 2007 amendment. The statute now reads,

> Any court or other agency or officer of this state having power to commit or transfer an inmate . . . to any institution for confinement may commit or transfer that inmate to any institution within or without this state if this state has entered into a contract or contracts for the confinement of inmates in that institution.

Cal. Penal Code § 11191(a).

As a result, state law no longer prohibits an out-of-state transfer without the prisoner's consent.

Maxey also notes that the California Code of Regulations requires a prisoner's consent for an out-of-state transfer. The relevant provision states that "transfer of a California prison inmate to an out-of-state prison facility shall not occur prior to the inmate signing a CDC Form 294, Interstate Compact Placement Agreement, witnessed by the institution head or delegate."  15 Cal. Code Regs. § 3379(a)(6) (2008).

In light of this regulation, Maxey characterizes his transfer as a violation of the Due Process Clause of the Fourteenth Amendment, which proscribes state action that tends to "deprive any person of life, liberty, or property without due process of law . . . " U.S. Const. amend. XIV, § 1.  To establish a violation, Maxey must demonstrate that one of these interests is at stake. <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005).

3

Maxey suggests that he has a liberty interest in remaining at his current facility. "A liberty interest may arise from either of two sources: the due process clause itself or state law." Toussaint v. McCarthy, 801 F.2d 1080, 1089 (9th Cir. 1986). Under the Constitution, an inmate has no liberty interest in being housed in any particular prison, even where conditions of confinement in the prospective facility are less desirable. See Meachum v. Fano, 427 U.S. 215, 225 (1976).

State law may yet give rise to a liberty interest in avoiding particular conditions of confinement. Sandin v. Conner, 515 U.S. 472 (1995). Maxey contends that the state regulation prohibiting transfer without an inmate's written consent creates a liberty interest in remaining at his current facility. With regard to policies for housing inmates, the Supreme Court held in Sandin:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Id., at 483-484 (citations and footnote omitted).

The Court in Sandin found no liberty interest in avoiding a 30-day assignment to segregated confinement, as it did

4

not "present a dramatic departure from the basic conditions of [the inmate's] sentence."  Id., at 485.  The Sandin inquiry is whether a prison policy "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id., at 484.  Under this standard, transfer to a facility located in another state is not a sufficient departure from normal conditions of imprisonment such that it would invoke Fourteenth Amendment rights.[1]

        B.    Maxey Has Not Demonstrated Actual Injury from the Alleged Deprivation of Access to the Courts.

Next, Maxey notes that, under the 14th Amendment, he is entitled to meaningful access to the courts for the purpose of challenging his conviction.  See Bounds v. Smith, 430 U.S. 817, 828 (1977)("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.").

However, Maxey has not demonstrated a deprivation of

---

[1] The Ninth Circuit has noted that a different standard applies to state statutes, as opposed to prison regulations, that purport to create a liberty interest. Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006).  Under state law, a liberty interest arises when the statutory language describing the procedure is mandatory. Id. Here, the 2007 amendment to Cal. Penal Code § 11191(a) deleted the mandatory language requiring an inmate's consent to an out-of-state transfer; there is currently no statutory language guaranteeing an inmate's right to refuse a transfer, mandatory or otherwise.

his right to access the courts; he therefore lacks standing to challenge his transfer based on a potential future violation. The Supreme Court has determined that all inmate claims for interference with access to the courts must demonstrate "actual injury" as an element. Lewis v. Casey, 518 U.S. 343, 349 (1996)("It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur.").

Furthermore, it is not certain that Maxey's rights would be violated if he were transferred out of state. Even accepting his allegation that an out-of-state facility would lack California state law books, this court is not convinced that there would be a Bounds violation. To satisfy the Constitution, "a prison must provide inmates with access to an adequate law library or, in the alternative, with adequate assistance from persons trained in the law." Lindquist v. Idaho State Bd. of Corrections, 776 F.2d 851, 855 (9th Cir. 1985). If Maxey's new facility provided him with a qualified paralegal and the right to request relevant materials in lieu of a California state law library, it would pass constitutional muster. The Supreme Court has suggested that there are a number of ways to guarantee

meaningful access to the courts.  Lewis, 518 U.S. at 352 (U.S. 1996)("One such experiment, for example, might replace libraries with some minimal access to legal advice and a system of court-provided forms such as those that contained the original complaints in two of the more significant inmate-initiated cases in recent years . . . .").

>       C.      Maxey Has Not Adequately Alleged an Equal
>               Protection Violation.

Maxey also alleges that prisoners are classified for transfer based in part upon their race or ethnicity, in violation of the Equal Protection Clause of the Fourteenth Amendment. However, Governor Schwarzenegger's Oct 4, 2006 Proclamation regarding emergency transfers provides that,

> A.   The CDCR Secretary shall prioritize for involuntary transfer the inmates who meet the following criteria:
> 1. Inmates who: (a) have been previously deported by the federal government and are criminal aliens subject to immediate deportation; or (b) have committed an aggravated felony as defined by federal statute and are subject to deportation.
> 2.  Inmates who are paroling outside of California.
> 3.  Inmates who have limited or no family or supportive ties in California based on visitation records and/or other information deemed relevant and appropriate by the CDCR Secretary.
> 4.  Inmates who have family or supportive ties in a transfer state.
> 5. Other inmates as deemed appropriate by the CDCR Secretary.

Governor Schwarzenegger, Prison Overcrowding State of Emergency

Proclamation, Oct. 4, 2006, available at http://gov.ca.gov/index.php?/proclamation/4278/.

None of the stated criteria in the Governor's emergency transfer policy include the prisoner's race or ethnicity. To the extent that Maxey believes his transfer was nonetheless based on his membership in a protected category, in violation of the Equal Protection Clause, he must allege that he has suffered this particular harm. See Lewis, 518 U.S. at 349 ("It is the role of courts to provide relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm; it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution."). Maxey's allegations do not make out a violation of his Fourteenth Amendment rights.

> D. Maxey Has Not Asserted Cognizable Claims Under the First, Eighth, and Thirteenth Amendments.

Maxey also cites violations of his First Amendment and Eighth Amendment rights. He has not, however, clarified how his rights to freedom of speech and freedom from cruel and unusual punishment have been abridged. Prison transfers are within the range of authority granted to detention centers, see Meachum, 427 U.S. 215, and, without more, do not rise to the level of cruel and unusual punishment or infringe upon the free exercise of speech or association.

Finally, Maxey asserts that an involuntary out-of-state transfer is equivalent to trading in slaves, a violation of the Thirteenth Amendment and Article I, Sec 9(1) of the Constitution. He also characterizes his transfer as a violation of 18 U.S.C. § 1584, which prohibits sale into involuntary servitude, and 18 U.S.C. § 1589, which prohibits forced labor. Yet Maxey does not allege any facts suggesting that he has been enslaved, sold into involuntary servitude, or forced into labor; the record indicates that he was incarcerated according to due process of law. It is unclear how transfer to a similar detention center in another state changes his status from prisoner to slave. Maxey does not cite any caselaw supporting this proposition, and this court does not find his unsupported contention persuasive.

III.     CONCLUSION.

Maxey has not identified a federal right that will be violated by his proposed transfer. Nor is his claim of a violation of the California regulation regarding prison procedure sufficient to constitute a civil rights violation. "Section 1983 requires [Plaintiff] to demonstrate a violation of federal law, not state law." Galen v. County of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007).[2]

---

[2] To the extent Maxey intends to challenge Governor Schwarzenegger's authority to issue the emergency proclamation, he is advised that the California state court has already ruled on this claim. See California Corr. Peace Officers Assn. v. Schwarzenegger, 77 Cal. Rptr. 3d 844 (Cal. Ct. App. 2008).

As Maxey's Complaint fails to establish a 28 U.S.C. § 1983 violation, the Complaint is DISMISSED. However, Maxey is granted leave to amend by March 9, 2009. Any amended complaint must be a complete document standing on its own; it may not simply incorporate by reference or attach the original Complaint. If Maxey fails to amend his Complaint by February 26, 2009, the Clerk of Court is directed to automatically enter judgment against him pursuant to this order.

Plaintiff is further notified that dismissal of this action for failure to state a claim will count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g). Pursuant to 28 U.S.C. § 1915(g), a prisoner may not bring a civil action or appeal a civil judgment under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 10, 2009.



                           /s/ Susan Oki Mollway
                           Susan Oki Mollway
                           United States District Judge

Maxey v. Schwarzenegger; Civil No.08-00710 HWG-SOM; SCREENING ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND.